IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE:  AFFILIATE SERVICES, LLC

    Debtor.

AFFILIATE SERVICES, LLC,

    Plaintiff,

v.      MISCELLANEOUS ACTION NO. 2:20-mc-00155

STRATFORD INSURANCE COMPANY,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Stratford Insurance Company's ("Stratford") Motion to Withdraw the Reference. (ECF No. 1.) For the reasons more fully explained below, the motion is **DENIED**.[1]

I.    BACKGROUND

This action arises out of a dispute over the scope of coverage, defense and indemnification in a commercial insurance policy. Because the background of the instant dispute is a snarl of procedural and jurisdictional issues, the Court will briefly recite only the portions relevant to these particular proceedings.

---

[1] Further pending before the Court is Affiliate Services, LLC's Motion to Strike And/Or Dismiss, in which Affiliate seeks to dismiss or strike Stratford's answers and counterclaims as improperly filed and non-justiciable. (ECF No. 13.) Because the motion to withdraw is denied, Affiliate's motion, along with the answers, counterclaims, and third-party complaint, are moot. Therefore, Affiliate's Motion to Strike And/Or Dismiss, (ECF No. 13), is **DENIED AS MOOT**.

On August 1, 2019, Richard M. Rashid ("Rashid") filed a lawsuit (the "Underlying Action") against Affiliate Services, LLC ("Affiliate"), and several other individuals and entities in the Circuit Court of Kanawha County, West Virginia. (ECF No. 2 at ¶ 2.) Affiliate is insured under a large commercial insurance policy (the "Policy"), which was issued to Affiliate's parent company. (ECF No. 16 at ¶ 3.) The Policy covers certain companies, executives, and employees under the "Monarch umbrella." (*Id.*)

Shortly after Rashid filed the Underlying Action, Affiliate and certain other defendants co-insured under the Policy (the "Co-Insureds") submitted requests to Stratford for defense and indemnification under the Policy. (*Id.* at ¶ 4.) Stratford responded that Affiliate and the Co-Insureds were only entitled to a fraction of the coverage they believed themselves entitled to. (*Compare* ECF No. 2 at ¶¶ 3–4 *with* ECF No. 3 at 2.) Affiliate and the Co-Insureds disputed this amount and notified Stratford of its alleged errors. (ECF No. 16 at ¶ 5.)

In May 2020, Stratford filed a coverage action against Affiliate and the Co-Insureds in the United States District Court for the Northern District of Georgia (the "Georgia Action"). (*Id.* at ¶ 16.) The Georgia Action sought to determine the scope of Stratford's obligations to continue defending the Underlying Suit, as well as any indemnification owed to Affiliate and the Co-Insureds. (ECF No. 2 at ¶ 5.)

Then, in July 2020, Affiliate and the Co-Insureds filed a third-party complaint (the "Insurance Action") against Stratford in the Circuit Court of Kanawha County. (ECF No. 16 at ¶ 7.) The Insurance Action sought a declaratory judgment that Stratford had an obligation to provide the full coverage under the Policy, and Affiliate and the Co-Insureds also asserted claims for breach of contract, bad faith, and unfair trade practices against Stratford. (*Id.* at ¶ 8.)

2

These several litigations and the eroding funds provided by Stratford under the Policy, as well as other financial burdens and pressures, forced Affiliate to file for Chapter 11 protection in the United States Bankruptcy Court for the Southern District of West Virginia on July 28, 2020. (*Id.* at ¶ 9.) The Underlying Action was removed to the Bankruptcy Court where it became Adversary Proceeding No. 2:20-ap-02009 ("AP 2009"). (*Id.*) Affiliate also sought to join its disputes with Stratford in the Bankruptcy Court, where it filed Adversary Proceeding No. 2:20-ap-02011 ("AP 2011"). (*Id.* at ¶ 10.) The claims asserted against Stratford in AP 2011 were substantially like those in the Circuit Court in the Insurance Action. (*Id.*) The Co-Insureds moved to intervene in AP 2011 to file their own complaint against Stratford. (*Id.* at ¶ 11.)

In response, Stratford moved to transfer or dismiss AP 2011, and argued that the "first-to-file" rule dictated that the Bankruptcy Court must allow the Georgia Action to proceed first. (*Id.* at ¶ 12.) Stratford near-simultaneously filed the instant Motion to Withdraw, initiating the proceedings in this Court. (*Id.* at 13; *see* ECF No. 1.) The Bankruptcy Court stayed ruling on the Co-Insureds' motion to intervene in AP 2011 and Stratford's motion to dismiss until this Court resolved the motion to withdraw. (*Id.* at ¶ 14.) During the pendency of those motions, Rashid sought to remand AP 2009—the Underlying Action—to the Circuit Court. (*Id.* at ¶ 15.) After initially granting the motion, the Bankruptcy Court stayed the remand upon a motion to reconsider. (*Id.*)

Then, in late November 2020, Affiliate filed its initial disclosure and plan in the Bankruptcy Court. (*Id.* at ¶ 18.) Affiliate sought to determine its coverage under the Policy first, with a stay put in place that would limit further expenditures in the other actions until the coverage dispute was resolved. (*Id.*) However, shortly after Affiliate filed its plan, the Northern District

3

of Georgia dismissed the Georgia Action for lack of personal jurisdiction. (*See* ECF No. 5–1.) The Georgia Court's dismissal mooted Stratford's motion to transfer, which had been stayed in the Bankruptcy Court. (ECF No. 16 at ¶ 19.)

On January 21, 2021, the Bankruptcy remanded AP 2009 to the Circuit Court and lifted the automatic stay to allow Rashid to litigate the action. (*Id.* at ¶ 20.) This was contrary to Affiliate's filed plan, and without a feasible way forward, Affiliate moved to voluntarily dismiss its Chapter 11 case. (*Id.* at ¶ 21.)

Notably, only days after Affiliate moved the Bankruptcy Court for a voluntary dismissal, Stratford filed an answer and counterclaim to Affiliate's AP 2011 complaint in this Court, along with an answer and counterclaim to the Co-Insureds' motion to intervene in AP 2011 and attached complaint. (*See* ECF Nos. 6, 7.) Stratford took these actions even though the instant motion remained pending, and the motion to intervene in AP 2011 similarly remained stayed.

The Bankruptcy Court granted Affiliate's motion for voluntary dismissal on February 2, 2021. (*Id.* at ¶ 24.) The very next day, the Co-Insureds withdrew their motion to intervene in AP 2011. (*Id.*) The remand of AP 2009 took effect on February 4. (*Id.* at ¶ 25.) On February 5, Affiliate and the Co-Insureds moved for a stay in the Underlying Action to allow the Insurance Action to proceed against Stratford. (*Id.*) That same day, this Court entered an order directing the parties to provide a status update as to Stratford's motion to withdraw in light of the dismissal of Affiliate's Chapter 11 case from the Bankruptcy Court. (ECF No. 11.)

Stratford filed its motion to withdraw on September 30, 2020. (ECF No. 1.) Affiliate responded in opposition on October 13, 2020. (ECF No. 3.) Stratford filed its reply on October 20, 2020. (ECF No. 4.) The parties' filed their respective status updates on February 15, 2021.

4

(ECF Nos. 16, 17.)  Affiliate filed a reply to Stratford's status update on February 22, 2021.  (ECF No. 19.)  With the briefing complete, Stratford's motion to withdraw is ripe for adjudication.

## II.  LEGAL STANDARD

This Court's local rules provide that "all proceedings arising under Title 11 or arising in or related to a case under Title 11, are referred to the Bankruptcy Court for disposition."  L.R. Civ. P. 83.13 (citing 28 U.S.C. § 157(a)).  The Bankruptcy Court is authorized to enter orders and judgments on all core bankruptcy matters and to submit proposed findings and recommendations to this Court on all non-core matters.  28 U.S.C. § 157(b), (c).  It is within the Court's discretion, however, to withdraw the reference "on its own motion or on timely motion of any party, for cause shown."  *Id.* at § 157(d).  This is known as permissive withdrawal.  Withdrawal is mandatory in other contexts not relevant here.  *See* 28 U.S.C. § 157(d) ("The district court shall . . . withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.").

"Cause" is not defined in the statute and there is little guidance from the Fourth Circuit as to the requisite type or degree of cause that must be demonstrated.  A survey of decisions from other circuits reveals there is substantial agreement that the following six factors are relevant to the analysis of good cause:

> (1) whether the proceeding is core or non-core; (2) the uniform administration of bankruptcy law; (3) promoting judicial economy; (4) the efficient use of the parties' resources; (5) the reduction of forum shopping; and (6) the preservation of the right to a jury trial.

*Allen v. Nat'l. City Mortg. Co.,* 2:04–mc–188, 2006 WL 3899997 at *2 (S.D. W.Va. July 13, 2006) (Goodwin, J.) (citing *In re U.S. Airways Group, Inc.,* 296 B.R. 673, 682 (E.D.Va.2003)).

5

The first factor—whether the matter is core or non-core—generally is afforded more weight than the others. *See, e.g.*, *Security Farms v. Int'l. Bhd. of Teamsters,* 124 F.3d 999, 1008 (9th Cir. 1997); *In re Orion Pictures Corp.,* 4 F.3d 1095, 1101 (2d Cir. 1993); *In re Coe–Truman Techs., Inc.,* 214 B.R. 183, 187 (N.D. Ill. 1997). Although the presence of core proceedings strongly militates against the withdrawal of the reference, it is not dispositive. It is within the Court's discretion to withdraw the reference even when core proceedings are involved. *See United States v. Miller,* 5:02–cv–168–c, 2003 WL 23109906 at *4–5 (N.D. Tex. Dec. 22, 2003).

### III.   DISCUSSION

Stratford's motion to withdraw poses a unique issue to the Court as to the effect the Bankruptcy Court's dismissal of the underlying bankruptcy case has on the pending motion to withdraw. Affiliate urges this Court to "relinquish jurisdiction" because the underlying bankruptcy case has been dismissed. (ECF No. 16 at 7.) Accordingly, Affiliate suggests applying a four-factor test for deciding whether a federal court should surrender jurisdiction. (*Id.*) The Court declines this invitation, as the test originating in *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 353 (1988), and adopted in *Porges* and *Querner*, *infra*, appears to only apply to remaining pendent state law claims.[2] *See Querner v. Querner (In re Querner)*, 7 F.3d 1199, 1201 (5th Cir. 1993); *In re Porges,* 44 F.3d 159, 162–63 (2d Cir. 1995). Here, the state law claims that remain are not pendent, as the Court would appear to have diversity jurisdiction over the parties, notwithstanding the adversary proceeding originating in bankruptcy. Still, as will be explained below, the relevant factors to the Court's analysis dictate that the motion to withdraw should be denied, especially in

---

[2] These four factors are (1) judicial economy; (2) convenience to the parties; (3) fairness; and (4) comity. *In re Porges,* 44 F.3d 159, 162 (2d Cir. 1995). Indeed, the Court would reach the same conclusion under these factors that denial of the motion to withdraw is appropriate in this matter.

6

light of the dismissal of the underlying bankruptcy action and the remand of the other related proceedings.

First, the decision of whether to retain jurisdiction over an adversary proceeding when the underlying bankruptcy case is dismissed is generally left to the sound discretion of the court. *See In re Porges,* 44 F.3d at 162. While the dismissal of the bankruptcy case does not automatically divest the bankruptcy court of jurisdiction over related proceedings, the dismissal of those adversary proceedings is generally favored. *Pal Family Credit Co., Inc. v. Cnty. of Albany*, 425 B.R. 1, 7 (N.D.N.Y. 2010). *See also In re Jefferson*, 447 B.R. 645, 650 (S.D. Miss. 2012) ("As a general rule the dismissal or closing of a bankruptcy case should result in the dismissal of related proceedings.") (quoting *Querner*, 7 F.3d at 1201). Notwithstanding this general rule, nothing mandates the automatic dismissal of adversary proceedings upon termination of the underlying bankruptcy case. *See Querner*, 7 F.3d at 1201–02 (citing 11 U.S.C. § 349). Here, the dismissal of the underlying bankruptcy action leads to the determination that the motion to withdraw should be denied.

Keeping this general rule in mind, the Court proceeds to the first factor: Whether AP 2011 is a core or non-core proceeding. However, in light of the dismissal, this factor becomes a moot point. Affiliate maintained that the insurance coverage dispute was core in that it was a motivating factor for its seeking Chapter 11 protection. (ECF No. 3 at 10, 12–13.) Stratford, however, argued that the scope of its coverage was a non-core proceeding and instead only involved "pre-petition state law contract and tort issues." (ECF No. 2 at 10.) While the Court believes the dispute over insurance coverage may in fact be core, *see In re Mid-Atlantic Resources Corp.*, 283 B.R. 176, 190 (S.D. W. Va. 2002), it does not reach that decision here, as any decision on this factor is moot.

7

Therefore, the Court finds that because the issue of core or not is moot, this factor weighs in favor of denying the motion.

The next factor—the uniform administration of bankruptcy law—is a nonfactor for the purposes of this analysis as, again, the underlying bankruptcy case has been dismissed. In truth, it could be said that the uniform administration of bankruptcy law is furthered by the denial of the motion to withdraw, in keeping with the general rule that the dismissal of the bankruptcy action favors the dismissal of related proceedings. *See Pal Family Credit Co., Inc.*, 425 B.R. at 7; *In re Jefferson*, 447 B.R. at 650. Still, even limited to the proceedings before the Court and the Bankruptcy Court, the uniform administration of bankruptcy law is a non-factor in this decision.

Next, the Court finds that promoting judicial economy weighs heavily in favor of denying the motion. The instant proceeding before the Court can hardly be said to have even begun, as the only item pending is the instant motion to withdraw. There is no complaint, answer, counterclaims, or discovery currently pending, as Affiliate's complaint remains pending in AP 2011 and the Co-Insureds withdrew their motion to intervene and are no longer parties to the proceeding.[3] In fact, the main pieces of this fragmented litigation have since been remanded to the Circuit Court of Kanawha County, and the principles of judicial economy would dictate that this related piece of litigation belongs there. *See Leon v. Couri*, No. 98 CIV 5028(HB)(RLE), 1999 WL 1427724 at *4 (S.D.N.Y. May 26, 1999).

---

[3] Complicating this matter is that Stratford "anticipatorily" filed a response to a motion to dismiss that it expected to be filed by Affiliate. (*See* ECF No 17 at 6–14.) In this "response," which was filed the same day as Affiliate's Motion to Strike And/Or Dismiss, Stratford argues that abstention is not warranted in this case and that the Court should retain jurisdiction. (*Id.*) Because Affiliate's motion is denied as moot, the Court does not reach the abstention question, even as some of the considerations before it overlap with an abstention analysis. *See, e.g.*, *Nautilus Ins. Co. v. 200 W. Cherry St., LLC*, 383 F.Supp.3d 494, 504–07 (D. Md. 2019).

8

Relatedly, the efficient use of the parties' resources also weighs heavily in favor of denying the motion to withdraw. Stratford, in particular, has not demonstrated much efficiency after having filed a separate action in the Northern District of Georgia, which was subsequently dismissed for lack of jurisdiction, and arguing to remain before this Court while the remaining litigation proceeds in the Circuit Court of Kanawha County. As illustrated below, Stratford has submitted even more filings in this case, many of which have no basis in this matter. Indeed, efficiency is not served by maintaining these splintered actions, either for the Court or for the parties. Therefore, this factor also weighs in favor of denying the motion.

Next, the facts that Stratford had filed a separate action in Georgia, which did not have personal jurisdiction, and that Stratford has filed procedurally deficient answers, counterclaims, and third-party complaints[4] in this action, suggest an attempt at forum shopping.[5] Moreover, and as referenced above, the Underlying Action and its related pieces have already resumed in the Circuit Court of Kanawha County, a fact that cannot be ignored in relation to Stratford's actions.

---

[4] The Co-Insureds had filed a motion to intervene in AP 2011 and attached their proposed complaint in which they joined Affiliate in asserting claims against Stratford. (*See* ECF No. 16 at ¶ 11; *In re Affiliate Services, LLC*, No. 2:20-ap-02011, ECF Nos. 5, 6.) However, the Bankruptcy Court stayed the motion to intervene, and the Co-Insureds withdrew the motion before it was ruled upon. (*See* ECF No. 16 at ¶ 14; *In re Affiliate Services, LLC*, No. 2:20-ap-02011, ECF No. 29.) Stratford seems to miscomprehend, willingly or not, the structure of this action: AP 2011 remains pending in the Bankruptcy Court, and it is not currently pending here. Instead, *only* the motion to withdraw the reference of AP 2011 is pending here, so unless and until the reference of AP 2011 is withdrawn to this Court, there is no complaint pending here. As such, Stratford's answers, counter-claims, and third-party claims are not ripe for adjudication. Thus, Stratford's answers and counterclaims as to Affiliate and the Co-Insureds, as well as its third-party complaint against Rashid, before this Court are procedurally defective.

[5] Notably, Stratford filed these answers and counterclaims only four days after Affiliate moved the Bankruptcy Court for a voluntary dismissal of its Chapter 11 case, which only raises the suspicion that these filings were quickly submitted in an attempt to avoid the jurisdiction of the Circuit Court. (*See* ECF Nos. 6, 7, 8, 9.) Because those pleadings are procedurally defective, the Court is unpersuaded by Stratford's arguments against dismissal under Federal Rule of Civil Procedure 41(a)(2). (ECF No. 17 at 5.) *See Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 277 (9th Cir. 1980) ("It is well established, however, that an objection premised upon an improper counterclaim (that is, in the sense that the court lacks subject matter jurisdiction over it) cannot prevent dismissal under Rule 41(a)(2) because the counterclaim is not entitled to independent adjudication.").

9

Therefore, the Court concludes that reducing forum shopping, the fifth factor in the above analysis, weighs profoundly in favor of denial.

Finally, the Court is not persuaded by Stratford's claim of preserving its right to a jury trial. As Affiliate points out, only some of the claims presented in AP 2011 actually involve the right to a jury. (ECF No. 3 at 14.) Affiliate is also correct that the Bankruptcy Court is qualified to conduct pre-trial proceedings, after which the reference may be withdrawn. *See In re Stansbury Poplar Place, Inc.*, 13 F.3d 122, 128 (4th Cir. 1993); *Dwyer v. First Nat'l Bank (In re O'Brien)*, 414 B.R. 92, 103 (S.D. W. Va. 2009). Thus, even if the Court found that Stratford was preserving its right to a jury trial, it could still deny the withdrawal of the reference until a later time.

But more importantly, and as explained above, Stratford will be able to litigate its interests more efficiently in state court, instead of the piecemeal litigation here. Because of the concurrent proceedings, the Court views the preservation of a trial by jury as a nonfactor as the right exists in state court with the rest of this litigation.

Considering the above, the Court finds that the balance of these factors weighs substantially in favor of denying the motion to withdraw the reference. However, even if the Court were to ignore these factors or weigh them differently, denial of the motion is still warranted with the dismissal of the underlying bankruptcy action.

## IV.    CONCLUSION

For the foregoing reasons, Stratford's Motion to Withdraw the Reference, (ECF No. 1), is **DENIED**. Accordingly, this case is **DISMISSED**. The Court **DIRECTS** the Clerk to remove this action from the Court's docket.

**IT IS SO ORDERED.**

10

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    May 24, 2021

_____
THOMAS E. JOHNSTON, CHIEF JUDGE